```
IN THE UNITED STATES DISTRICT COURT
   FOR THE NORTHERN DISTRICT OF TEXAS
            FORT WORTH DIVISION
```

CAREFLITE                              §
                                       §
VS.                                    §
                                       §
OFFICE AND PROFESSIONAL                §
EMPLOYEES INTERNATIONAL                §  CIVIL ACTION NO.4:07-CV-334-Y
UNION, AFL-CIO                         §
                                       §
and                                    §
                                       §
CRAIG HILTON                           §

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

Before the Court is plaintiff CareFlite's Motion for Summary Judgment (doc 59). By the motion, Careflite seeks summary judgment on Counts II and III of the Amended Counterclaim (doc. 28) of defendants Office and Professional Employees International Union, AFL-CIO ("the Union"), and Craig Hilton. After review, the Court concludes that the mandatory arbitration mechanism of the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151-188, preempts the portion of Count II that is before the Court.[1] The Court also concludes, however, that the RLA does not preclude Count III. Therefore, the Court will grant CareFlite's motion in part and deny it in part.

I. Background

This case arises out of grievances that the Union filed on behalf of Hilton against CareFlite, Hilton's former employer. CareFlite, a non-profit medical air-transportation company, had

---

[1] A portion of Count II has already been referred to arbitration. *See infra* Part III.A.

employed Hilton as a pilot. Under the collective-bargaining agreement ("CBA") in effect during the relevant time, CareFlite pilots were required to obtain an Airline Transport Pilot Certificate ("ATPC") from the Federal Aviation Administration. (App. to CareFlite's Mot. Summ. J. 105-06.) In addition, the CBA, together with a side letter, required that CareFlite provide an ATPC training class and that all "current" pilots obtain certification within one year of the class. (App. to Hilton's Resp. 22, 138.) Pursuant to those requirements, CareFlite provided the class, the date of which set the one-year deadline for "current" pilots to obtain an ATPC, at May 26, 2007. (App. to CareFlite's Mot. Summ. J. 11.)

But in June 2006, CareFlite discharged Hilton over unrelated matters, and the Union filed a grievance. (*Id.* at 16.) An arbitrator determined that the discharge was not for "just cause," and ordered that Hilton be reinstated. (App. to Hilton's Resp. 160-61.) Accordingly, Hilton was reinstated on April 20, 2007. (App. to CareFlite's Mot. Summ. J. 17.) Following reinstatement, Hilton was informed that he would have to report for ATPC training on May 7, 2007, and that he was to obtain an ATPC by May 26, 2007. (*Id.* at 17-18.) Hilton sought an extension of this deadline, as he had not been employed by CareFlite for much of the year. (*Id.* at 18; App. to Hilton's Resp. 90.) CareFlite denied Hilton's request for an extension and, on May 15, 2007, the Union filed a grievance on Hilton's behalf ("the May grievance"), arguing that CareFlite denied Hilton's requested extension in retaliation for Hilton's

2

prevailing in the arbitration over his June 2006 termination. (App. to CareFlite's Mot. Summ. J. 18-19; App. to Hilton's Resp. 90.) After the ATPC deadline passed, CareFlite terminated Hilton for not having the certification. (App. to CareFlite's Mot. Summ. J. 22-23; App. to Hilton's Resp. 92.) The Union then filed a second grievance on behalf of Hilton in June 2007 ("the June grievance") challenging the discharge and seeking Hilton's reinstatement and an extension of the ATPC deadline. (App. to CareFlite's Mot. Summ. J. 24; App. to Hilton's Resp. 92.)

CareFlite denied both the May and the June grievances and filed suit for a declaratory judgment in this Court, arguing that neither grievance was arbitrable. (App. to CareFlite's Mot. Summ. J. 24.) The parties then filed cross motions for summary judgment on this point (docs. 19, 39) and, on July 30, 2008, this Court entered an order denying CareFlite's motion for summary judgment, granting Hilton and the Union's motion for summary judgment, and concluding that both of the grievances are subject to arbitration (doc. 49). CareFlite appealed that order (doc. 51).

On August 6, 2010, the United States Court of Appeals for the Fifth Circuit affirmed the July 30 order in part, reversed it in part, and remanded for further proceedings (doc. 56). The Fifth Circuit concluded that the May grievance is arbitrable, and the May grievance has since been referred to arbitration (doc. 58). As for the June 2007 grievance, the Fifth Circuit concluded that the CBA excludes it from arbitration. The Fifth Circuit also observed, however, that "because the CBA expressly contemplates . . . ATPC-

3

related discharges and excludes them from arbitration, Hilton's termination is not 'independent' from the CBA for the purpose of determining whether Hilton may yet bring claims under state or federal law." *CareFlite v. Office and Prof'l Emps. Int'l Union, AFL-CIO*, 612 F.3d 314, 322 (5th Cir. 2010). The Fifth Circuit further stated that "[a]ny independent state or federal law claims Hilton has against CareFlite for its treatment of him that do not arise from the CBA and are not governed by the RLA arbitration requirement, to the extent the district court finds that any exist, may be considered in due course by the district court on remand." *Id.* at 325.

In light of the Fifth Circuit's observations, this Court noted in its order of August 12, 2010 (doc. 58), that the Court's current task is to determine whether the Union and Hilton have any independent bases in state or federal law to complain of Hilton's allegedly wrongful termination. The Court, therefore, granted CareFlite leave to file a motion for summary judgment, addressing whether the Union and Hilton have raised any claims independent of the CBA and whether summary judgment is appropriate on such claims. Accordingly, CareFlite filed the instant motion.

II. Legal Standards

    A. Federal Rule of Civil Procedure 56

When the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," summary judgment is appropriate. Fed. R. Civ. P.

4

56(a). "[A dispute] is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citation omitted). A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To demonstrate that a particular fact is, or cannot be, genuinely in dispute, a party must either (1) cite to particular parts of materials on the record (e.g., affidavits), (2) show that the materials cited by the adverse party do not establish the presence or absence of a genuine dispute, or (3) show that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1). Although the Court "need consider only the cited materials, . . . it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In evaluating whether summary judgment is appropriate, the Court "views the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010) (citation omitted) (internal quotation marks omitted). "[I]f no reasonable juror could find for the non-movant," summary judgment should be granted. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

B. RLA

Congress passed the RLA "to promote stability in labor-

5

management relations by providing a comprehensive framework for resolving labor disputes." *CareFlite*, 612 F.3d at 318 (quoting *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994)). "To realize this goal, the RLA establishes a mandatory arbitral mechanism for the 'prompt and orderly settlement' of two classes of disputes." *Hawaiian Airlines*, 512 U.S. at 252 (quoting 45 U.S.C.A. § 151a (West 1010)). The first class of disputes, called major disputes, "are those concerning 'rates of pay, rules or working conditions.'" *CareFlite*, 612 F.3d at 318 (quoting *id.*). They "arise where there is no collective agreement or where it is sought to change the terms of one." *Id.* at 320 (quoting *Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 302 (1989)). The second class, called minor disputes, "resist a rigid definition," but, essentially, are those that "grow out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." Such disputes "involve controversies over the meaning of an existing [CBA] in a particular fact situation," and "can be resolved through an interpretation of the CBA." *Id.* (citations omitted) (internal quotation marks omitted); *Carmona v. Southwest Airlines Co.*, 536 F.3d 344, 348 (5th Cir. 2008) (citation omitted). In other words, "major disputes seek to create contractual rights, minor disputes to enforce them." *CareFlite*, 612 F.3d at 318 (quoting *Hawaiian Airlines*, 512 U.S. at 252).

"If the grievances are minor disputes, they 'must be resolved

6

only through the RLA mechanisms, including the carrier's internal dispute-resolution processes and an adjustment board established by the employer and the unions.'" *Id.* (quoting *Hawaiian Airlines*, 512 U.S. at 252). "Congress considered it essential to keep these so-called 'minor' disputes within the Adjustment Board and out of the courts." *Carmona*, 536 F.3d at 347 (quoting *Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 94 (1978)) (internal quotation marks omitted). However, "[t]he assertion of any right that is not created by a CBA is . . . not subject to binding arbitration under the statute." *CareFlite*, 612 F.3d at 320-21. That is, claims that are independent of the CBA are not "minor disputes," and the RLA's mandatory arbitration mechanism does not preclude or preempt their being brought in federal court. *See id.*

III. Discussion

Hilton and the Union's Amended Counterclaim (doc. 28) contains three counts. Count I involves the arbitrability of the May and June grievances and, as previously explained, has been resolved by the Fifth Circuit. With regard to Counts II and III, CareFlite contends that neither claim is independent of the CBA and that each is, therefore, preempted (or precluded) by the RLA.

A. Count II: Breach of the CBA

Count II, which was pled in the alternative to Count I, contains two primary allegations. First, Count II alleges that CareFlite breached the CBA by refusing to grant Hilton additional time to obtain an ATPC. Pursuant to the Fifth Circuit's July 13

7

decision, the arbitrator will decide the merits of this allegation. Second, Count II alleges that CareFlite breached the CBA when it discharged Hilton. This portion of Count II is now before the Court.

After review, the Court concludes that this latter, discharge-related portion of Count II is preempted by the RLA because it grows out of an interpretation of the CBA and centers over the meaning of the CBA. Indeed, without the CBA, Count II would not exist. Nevertheless, Hilton and the Union argue that the Court should hear the merits of Count II because, in light of the Fifth Circuit's determination that the ATPC-related discharge question is nonarbitrable, Hilton will have a right without a remedy if the Court now determines that Count II is preempted. This argument is unavailing, however, given that the language in the CBA excluding ATPC-related discharges from arbitration is the product of negotiations in which Hilton and the Union were involved. As the Fifth Circuit noted, "unions and employees can contract to exempt certain claims from arbitration through their bargained-for CBAs." *CareFlite*, 612 F.3d at 322 (citations omitted). Thus, to the extent that Hilton lacks a remedy, it is partially of his own making--or at the very least, his union's making.

B. Count III: Retaliation and Discrimination Under the RLA

Count III alleges that CareFlite's "treatment of Hilton since his reinstatement, including, but not limited to, CareFlite's refusal to provide Hilton with additional time to obtain an ATPC Certification and CareFlite's discharge of Hilton, constitute

8

illegal discrimination and retaliation under [45 U.S.C.A. § 152, Third and Fourth (West 2010), of] the RLA." (Am. Compl. 15, at ¶ 53.) More specifically, Hilton and the Union allege that "Hilton has engaged in activities protected by the RLA, including, but not limited to, his advocacy for pilots rights, his participation in the collective bargaining negotiations and his participation in the arbitration over this June 6, 2006 discharge," and that, because of those activities, CareFlite denied Hilton an extension of the ATPC deadline and discharged Hilton. (Am. Compl. 14, at ¶ 49.) Hilton and the Union assert that Count III is not precluded from federal-court review because it arises out of a federal statute and does not require an interpretation of the CBA.

CareFlite contends that Count III is predicated upon Hilton's discharge, which "was directly based on and intextricably intertwined with the CBA." (CareFlite's Br. 10.) According to CareFlite, Count III stems from the parties' differing interpretations of the CBA and is, therefore, precluded by the RLA's mandatory arbitration mechanism. CareFlite also contends that Count III is precluded because, under the burden-shifting analysis utilized in RLA retaliation cases, CareFlite must articulate a legitimate reason for its decision and its reason is based on the CBA.[2] CareFlite further contends that Hilton and the

---

[2] The burden-shifting analysis to which CareFlite refers is summarized as follows:

> Claims by employees of unlawful adverse employment actions arising under the RLA are evaluated according to a burden-shifting methodology that was . . . developed under the National Labor

Union's efforts at demonstrating pretext under the burden-shifting analysis will require interpretation of the CBA.

As previously explained, when the resolution of a claim depends upon an interpretation of the CBA, that claim is precluded by the RLA. *Hawaiian Airlines*, 512 U.S. at 261 (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988)). But when the claim "involves rights and obligations that exist independent of the CBA," the claim is not precluded. *Id.* at 260. "[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a [CBA] will be consulted in the course of [the] litigation" does not require preemption of the claim. *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994) (citing *Lingle*, 486 U.S. at 413 n.12). Moreover, even if analysis of the claim "would require addressing precisely the same set of facts" as would arbitration under the CBA, "the claim is 'independent' of the [CBA]" as long as the claim "can be resolved without interpreting the [CBA] itself." *Lingle*, 486 U.S. at 409-10.

After review, the Court concludes that Count III is independent of the CBA and, thus, is not precluded by the RLA's mandatory arbitration mechanism. The CBA is not the "only source"

---

> Relations Act ("NLRA"). The burden is initially on the employee to show that the employer's action was based on anti-union animus or, in other words, that the employee's protected conduct was a substantial or motivating factor in the adverse action. If the employer responds with a legitimate business reason for its action, the question is whether that reason was bona fide or pretextual.

*Silva v. Cont'l Airlines, Inc.*, No. H-07-1249, 2008 WL 4552779, at *6 (S.D. Tex. Oct. 7, 2008) (citing *Roscello v. Southwest Airlines Co.*, 726 F.2d 217, 222 (5th Cir. 1984)) (internal quotation marks omitted).

of Hilton's right "not to be discharged wrongfully" in this case. *Hawaiian Airlines*, 512 U.S. at 258. Rather, Count III arises out of Section 2, Third and Fourth, of the RLA, which "protects the rights of employees to engage in organized union activities without interference from their employer." *Silva*, 2008 WL 4552779, at *6 (citing *Trans World Airlines, Inc. v. Indep. Fed'n of Flight Attendants*, 489 U.S. 426, 440 (1989); *Johnson v. Express One Int'l*, 944 F.2d 247, 252 (5th Cir. 1991)). "Wholly apart from any provision of the CBA," CareFlite had an obligation not to discharge or otherwise discriminate against Hilton in retaliation for his activities with the Union. *Hawaiian Airlines*, 512 U.S. at 258; *see* 25 U.S.C.A. § 152.

Moreover, this conclusion is not altered by the fact that CareFlite intends to carry its burden under the burden-shifting analysis by pointing to the CBA. Under *Carmona v. Southwest Airlines Co.*, 536 F.3d 344 (5th Cir. 2008), the relevant inquiry is whether CareFlite's defense requires **interpretation** the CBA, not simply whether it will be referred to. In *Carmona*, defendant Southwest Airlines argued that the relevant CBA was necessary to evaluate whether the plaintiff had established a prima-facie case, whether Southwest had proffered a nondiscriminatory reason for its decision, and, if so, whether Southwest's proffered justification was merely pretext for discrimination. In addressing this argument, the Fifth Circuit stated,

> [e]ven though a court would have to refer to the CBA to consider fully each of the alleged acts of disparate

> treatment, there is no disagreement about how to interpret these provisions of the CBA that detail Southwest's procedures for assessing attendance, leave, discipline, and termination. [The plaintiff]'s factual allegations that unexcused absences by female flight attendants went unpunished, that remarks of his supervisors regarding male employees were discriminatory, and that his chronic illnesses were the real reason he was fired, do not bring the meaning of any CBA provisions into dispute. He alleges that CBA procedures were applied in a discriminatory manner, not that CBA procedures were fundamentally discriminatory.

*Carmona*, 536 F.3d at 349. Similarly, for purposes of their retaliation claim, Hilton and the Union do not dispute that the CBA supports termination of an employee who fails to timely obtain an ATPC. (Hilton's Resp. 3-4.) They simply urge that CareFlite applied this provision in a retaliatory and discriminatory manner with regard to Hilton. (*Id.* at 19.)

It is noteworthy, in the Court's view, that the Fifth Circuit distinguished *Carmona* from *Reece v. Houston Lighting & Power Co.*, 79 F.3d 485 (5th Cir. 1996), a case upon which CareFlite relies. *Carmona*, 536 F.3d at 350. As the *Carmona* court observed, in *Reece* the defendant's proffered defense required **interpretation** of the CBA--not just reference to it--and the plaintiff's claim turned on that interpretation. *See id.; see also Hawaiian Airlines*, 512 U.S. 246, 265-66 (noting that a claim is not a minor dispute subject to the RLA's arbitration mechanism merely because the employer's decision was arguably justified by the CBA). Thus, because Count III does not depend on an interpretation of the CBA, it is "independent" of the CBA and is not precluded by the RLA's mandatory arbitration mechanism--even if the CBA will, at some

point, have to be consulted.[3]

C. Summary Judgment on the Merits

Alternatively, CareFlite contends that it is entitled to summary judgment on the merits of Counts II and III. CareFlite provides no analysis, however, other than the following two-sentence paragraph:

> The [C]ourt may determine that the CBA is not ambiguous, that Hilton's and the Union's interpretations of the CBA are not reasonable, and that CareFlite complied with and uniformly enforced the ATP requirement and deadline for pilots in the "current" category. If the [C]ourt makes such a determination, then as a matter of law, compliance with and uniform enforcement of the CBA does not breach the CBA or violate RLA section 2[,] Third and Fourth.

(CareFlite's Br. 19.) This is not sufficient to meet the requirements of Rule 56, and the Court is not prepared to say that there are no genuinely disputed material facts with regard to Count III. Thus, the Court will not grant summary judgment on the basis of the claims' merits.

IV. Conclusion

For the foregoing reasons, the Court concludes that the RLA preempts the portion of Count II that is before the Court. The

---

[3] CareFlite adamantly asserts that Count III turns on the parties' differing interpretations of the CBA. In support, CareFlite points out the various portions of the CBA with which Hilton and the Union took issue in the briefing of their June 20, 2008, motion for summary judgment (docs. 39, 46). (CareFlite's Br. in Supp. Mot. Summ. J. 12-15.) Each of the instances that CareFlite has highlighted, however, pertains to Hilton and the Union's arguments on the issues of arbitrability and breach of the CBA--not retaliation under the RLA. Moreover, even to the extent that Hilton and the Union disagree with CareFlite's interpretation of the CBA, those disagreements do not have to be evaluated in order to resolve the factual issue of whether CareFlite's refusal to grant an extension of the ATPC deadline and termination of Hilton's employment were done in retaliation for his union activities.

TRM/dc 13

Court also concludes, however, that the RLA does not preclude Count III. Therefore, CareFlite's motion for summary judgment is GRANTED as to Count II but DENIED as to Count III.

SIGNED February 11, 2011.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE